# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RAJAN SHARMA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 0021 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BIG LIMOS MFG, LLC and | ) | |
| MICHAEL WALSTROM, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rajan Sharma ("Plaintiff") has sued Defendants Big Limos MFG, LLC ("Big Limos") and Michael Walstrom ("Walstrom"), alleging breach of contract. On March 29, 2017, the Court entered an order of default as to Big Limos. Since that time, Plaintiff has moved for entry of default as to Walstrom. In addition, Defendants have now appeared and filed a motion asking the Court to vacate the entry of default as to Big Limos, deny Plaintiff's motion for entry of default as to Walstrom, and grant Defendants leave to file an answer or responsive pleading. For the reasons stated herein, Defendants' motion [18] is denied. Plaintiff's motion for entry of default as to Walstrom [15] is granted.

## Background

On January 3, 2017, Plaintiff filed suit against Big Limos and Walstrom, alleging that they breached an agreement to sell Plaintiff a customized limousine for $125,000. Compl. ¶¶ 14, 22–26, ECF No. 1. Big Limos is a limited liability company with its principal place of business in Lake Havasu City, Arizona. *Id.* ¶ 2. Walstrom—who is Big Limos's founder, CEO, and registered agent—resides in Huntington Beach, California. *See id.* ¶ 3.

On January 6, 2017, Plaintiff, through a process server, attempted to serve Defendants at Big Limos's registered address in Lake Havasu City. Pl.'s 1st Mot. Default ¶ 2, ECF No. 10. When the process server arrived at the address, however, he learned that it belonged to a grocery store. *Id.* The grocery store's staff members were unable to give any information as to whether Big Limos or Walstrom could be found at the address. *Id.*

On January 11, 2017, Plaintiff attempted to serve Walstrom at his residential address in Huntington Beach. Pl.'s Mot. Alt. Serv. ¶ 5, ECF No. 6. When Plaintiff's process server arrived at the address, however, there were no vehicles parked in the driveway, and no one answered the door. *Id.* The process server reattempted service on January 16, 2017. *Id.* ¶ 6. That day, there were two cars parked in the driveway, but a locked gate made the front door inaccessible. *Id.* Plaintiff attempted service at the Huntington Beach address several more times from January 19 to January 22, 2017, making six attempts in total that month. *Id.* ¶¶ 7–10. No individuals could be found at the address during any of these attempts. *Id.* ¶ 11.[1]

Unable to serve Big Limos through Walstrom at the Huntington Beach address, Plaintiff next attempted to serve Big Limos through the Arizona Corporation Commission. *See* Pl.'s 1st Mot. Default ¶ 4. The Arizona Corporation Commission successfully completed service on Big Limos on February 9, 2017. *Id.* In the meantime, at the Court's direction, Plaintiff continued his efforts to serve Walstrom. *See* Pl.'s 2d Mot. Default ¶¶ 6–7, ECF No. 15. Plaintiff hired a

---

[1] According to Walstrom, no one was at the Huntington Beach residence when Plaintiff's process server visited in January because the property caught fire on July 23, 2016, and Walstrom and his family thus were "forced to move into a hotel." Walstrom Aff. ¶ 33, ECF No. 23-1. Walstrom claims that he and his family moved back into the Huntington Beach residence on January 23, 2017, the day after the process server's last attempt to serve him there. *Id.*

private investigator named Peter Dotson[2] ("Investigator Dotson") to assist with these efforts. *See id.* ¶ 7. Investigator Dotson confirmed that the Huntington Beach address was Walstrom's most current home address. *Id.* ¶ 8. Investigator Dotson also contacted Rich McAndrews ("Investigator McAndrews"), a local investigator in California. *Id.* ¶ 10. Investigator McAndrews, too, confirmed that Walstrom was the current owner of the property at the Huntington Beach address. *Id.* ¶ 11.

On February 24, 2017, Investigator Dotson spoke with Walstrom over the telephone. *Id.* ¶ 9. In a signed affidavit, Investigator Dotson described his conversation with Walstrom as follows:

> I called Walstrom [ ] and spoke in detail regarding his knowledge of this case and his desire to make proceeding as difficult as possible for [Plaintiff's counsel]. Walstrom claimed to be an ex-attorney who knows the law. Walstrom stated he would honor the original contract to produce a custom Limo for [Plaintiff], provided [Plaintiff] drops the lawsuit. Walstrom said if [Plaintiff] did not cease efforts in this lawsuit, Walstrom would incur as much cost for service as possible . . . . Walstrom stated he is well aware of this lawsuit.

*Id.*, Ex. D ("Dotson Aff."), at 1. Walstrom acknowledges that he spoke with Investigator Dotson on February 24, 2017, and he does not dispute the above description of their conversation. *See* Walstrom Aff. ¶¶ 41–46.

From March 14 to March 22, 2017, Investigator McAndrews made at least three more unsuccessful attempts to serve Walstrom at the Huntington Beach address. Pl.'s 2d Mot. Default ¶¶ 13, 19–20, 22. According to Investigator McAndrews, no individuals were at the address during this period, *id.*, although a black Mercedes was parked in the driveway each time he visited, *id.* ¶ 29. Walstrom disputes this assertion, maintaining that he and his family members

---

[2] The Court notes that Peter Dotson's name is written in some of Defendants' filings as "Pete Tozzin." *See* Walstrom Aff. ¶ 41, ECF No. 23-1. It appears that these two names are meant to refer to the same individual, with "Tozzin" merely being a misspelled phonetic variant of "Dotson."

3

regularly entered and exited the property at the Huntington Beach address around this time. Walstrom Aff. ¶ 47.

On March 23, 2017, Investigator McAndrews again went to the Huntington Beach address to attempt service. Pl.'s 2d Mot. Default ¶ 24. That day, he saw a black Mercedes slowly pass the residence before making a U-turn at the end of the block. *Id.* ¶ 25. The Mercedes then returned and parked in front of Walstrom's residence. *Id.* A woman who matched descriptions of Walstrom's wife exited the driver's side of the Mercedes. *Id.* ¶ 26. Investigator McAndrews approached the woman and called her name, but she immediately ran into the residence and shut the patio door behind her. *Id.* ¶ 27. Investigator McAndrews dropped the summons and the complaint over the patio door and advised the woman that she was being served on behalf of Walstrom. *Id.* ¶ 28. He also left copies of the service documents on the patio and under the windshield wipers of the Mercedes, and he mailed another copy to Walstrom at the Huntington Beach address. *Id.* ¶¶ 29–30. Plaintiff asserts (and Defendants do not dispute) that these efforts were sufficient to serve process on Walstrom. *See id.* ¶ 31.

Meanwhile, on March 22, 2017, Plaintiff filed a motion for entry of default as to Big Limos and mailed copies of the motion to Big Limos's registered address and Walstrom's Huntington Beach address. Pl.'s 1st Mot. Default at 6. The Court held a hearing on the motion on March 29, 2017. Defendants did not appear at the hearing, and Big Limos had neither filed an appearance nor responded to Plaintiff's complaint by that time.[3] Accordingly, the Court granted Plaintiff's motion and entered an order of default as to Big Limos. Order of 3/29/17, ECF No. 12.

---

[3] Because Big Limos was served on February 9, 2017, through the Arizona Corporation Commission, its answer or responsive pleading was due by March 2, 2017. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), (b).

4

On April 19, 2017, Plaintiff filed a motion for entry of default as to Walstrom. *See* Pl.'s 2d Mot. Default. Again, Plaintiff mailed copies of the motion to Big Limos's registered address and Walstrom's Huntington Beach address. *Id.* at 11. By that date, Defendants still had not appeared or responded to the complaint.[4]

On April 24, 2017, attorney Dennis Esford ("Esford") filed an appearance on behalf of both Defendants. Defendants claim that they initially contacted Esford regarding this litigation on February 16, 2017. Defs.' Mot. Vacate ¶ 1, ECF No. 18. At that time, Esford told Defendants that he could not represent them until he first reviewed the substance of Plaintiff's claims and determined whether he had time to take the case. *Id.* ¶ 2. Nevertheless, Defendants claim that they believed Esford had agreed to represent them. *Id.* ¶ 3. It was not until April 24, 2017, that Esford learned of Defendants' mistaken belief. *Id.*[5] Upon learning this information, Esford immediately filed an appearance on Defendants' behalf. Defs.' Mot. Vacate ¶ 4. That same day, Defendants, through Esford, also filed a motion asking the Court to vacate the entry of default as to Big Limos. *Id.* ¶ 12.

On April 26, 2017, the Court held a hearing on Plaintiff's motion for entry of default as to Walstrom. Esford attended the hearing on Defendants' behalf. During the hearing, the parties discussed Plaintiff's pending motion for entry of default as to Walstrom, as well as Defendants' pending motion to vacate the entry of default as to Big Limos. At the conclusion of the hearing,

---

[4] Because Walstrom was served through his wife at the Huntington Beach address on March 23, 2017, his answer or responsive pleading was due by April 13, 2017.

[5] Esford came to learn of Defendants' mistaken belief because he contacted them on April 24, 2017, to tell them that he could not represent them based on his review of the case. *See* Walstrom Aff. ¶ 37. According to Walstrom, this information "caught [him] by surprise," and he told Esford that he had been under the impression that Esford had already agreed to represent Defendants in this matter. *Id.*

5

the Court entered and continued Plaintiff's motion and set a briefing schedule for Defendants' motion.

## Analysis

Defendants' motion to vacate requests several forms of relief. Primarily, the motion seeks to vacate the entry of default as to Big Limos under Federal Rule of Civil Procedure ("Rule") 55(c). In addition, the motion asks the Court to deny Plaintiff's motion for entry of default against Walstrom as moot, as well as to grant Defendants leave to file an answer or responsive pleading to the complaint within thirty days. For the reasons set forth below, the Court concludes that Defendants are not entitled to the relief their motion seeks. Accordingly, Defendants' motion is denied, and Plaintiff's motion for entry of default as to Walstrom is granted.

### I. Defendants' Motion to Vacate Entry of Default as to Big Limos

Under Rule 55(c), a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). A party moving to vacate an entry of default under Rule 55(c) bears the burden of showing (1) "good cause" for the default, (2) "quick action" to correct the default, and (3) a "meritorious defense" to the nonmovant's claim. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (internal quotation marks omitted). The movant's failure to make any one of these three showings warrants denial of a motion to vacate. *See Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46–47 (7th Cir. 1994).

The three-part test that governs relief from an entry of default under Rule 55(c) also governs relief from a default judgment under Rule 60(b). *See Cracco*, 559 F.3d at 631. In the Rule 60(b) context, courts apply this test "stringent[ly]," setting a high hurdle for the moving party out of "respect for the finality of judgments." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). In the Rule 55(c) context, however, the test is "more liberally applied," because no final

judgment has yet been entered. *Id.* (quoting *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)) (internal quotation marks omitted); *accord Pretzel*, 28 F.3d at 45. In applying this test, the Court is mindful that recent Seventh Circuit precedent has "articulate[d] a policy of favoring trial on the merits over default judgment." *Cracco*, 559 F.3d at 631; *accord Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007). *But see O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1401 (7th Cir. 1993) ("[T]his circuit no longer follows the earlier doctrine disfavoring defaults.").

Here, Defendants seek to vacate the entry of default as to Big Limos on the ground that they can establish all three requirements for relief under Rule 55(c). For the reasons that follow, however, the Court concludes that Defendants have not established the requirements of good cause for default and quick action to correct the default. Accordingly, Defendants' motion to vacate the entry of default as to Big Limos must be denied.[6]

### A. Good Cause

According to Defendants, Big Limos has good cause to excuse its default because Defendants had a legitimate misunderstanding as to whether they had entered into an attorney-client relationship with Esford prior to April 24, 2017. In response, Plaintiff contends that such a misunderstanding is insufficient to establish good cause and that, in any event, Defendants' willful evasion of this lawsuit undermines Big Limos's ability to obtain relief under Rule 55(c). On both points, the Court agrees with Plaintiff.

Although no bright-line rules define "good cause" for purposes of Rule 55(c), the Seventh Circuit has held that a party seeking to vacate an entry of default cannot show good

---

[6] Because the Court denies Defendants' motion to vacate the entry of default as to Big Limos, it need not address Plaintiff's argument that, in the event that the Court were to grant Defendants' motion, it should award costs and fees to Plaintiff. *See* Pl.'s Resp. at 8–9, ECF No. 21.

cause merely based on "routine" problems such as miscommunications with an attorney. *Pretzel*, 28 F.3d at 46 (citing *Conn. Nat'l Mortg. Co. v. Brandstatter*, 897 F.2d 883, 884–85 (7th Cir. 1990)). In addition, district courts have held that neither an attorney's lack of diligence nor a party's delay in retaining counsel is sufficient cause to vacate an entry of default. *See Echo/Tenn. Holdings, LLC v. AvidPath Inc.*, No. 13 C 309, 2014 WL 1698340, at *2 (N.D. Ill. Apr. 29, 2014); *Lyons P'ship, L.P. v. Welle*, No. 08 C 2909, 2010 WL 680877, at *2 (N.D. Ill. Feb. 22, 2010).

Defendants' misunderstanding as to whether Esford agreed to represent them prior to April 24, 2017, falls squarely in line with these authorities. The misunderstanding arose from a routine, foreseeable miscommunication with an attorney, and it therefore does not establish good cause to excuse Big Limos's default. *See Pretzel*, 28 F.3d at 45 (holding that attorney's difficulties in communicating with defendant was not good cause to excuse default); *Boros Plumbing, Inc. v. Plumber's Pension Fund*, No. 09 C 5238, 2010 WL 2574222, at *2 (N.D. Ill. June 23, 2010) (holding that a "lack of communication between attorney and client" was not good cause to excuse default).[7] Moreover, this misunderstanding could have been readily avoided through greater diligence on Defendants' part. For example, given their belief that Esford represented them in this matter, Defendants could have (and likely should have) reached out to apprise Esford of developments in the case when Investigator Dotson called Walstrom on February 24 or when Walstrom was served with the summons and complaint on March 23.

---

[7] Defendants argue that these cases are distinguishable because they involved miscommunications between an attorney and his client only after an attorney-client relationship had been formed, whereas Defendants' miscommunication with Esford occurred before the formation of such a relationship. Reply at 3–4, ECF No. 23. Be that as it may, the Court finds this to be a distinction without a difference. Although Esford may not yet have been Defendants' attorney at the time of the miscommunication, the miscommunication nevertheless amounts to no more than an ordinary misunderstanding akin to those that have previously been found insufficient to establish good cause.

There is no indication, however, that Defendants attempted to contact Esford at all from February 16 to April 24. If they had done so, their misunderstanding regarding formation of an attorney-client relationship would likely have come to light in a more timely manner. Defendants have offered no explanation for their lapse in communication during this nine-week period, and such a lapse does not support good cause to excuse a default.

What is more, even assuming *arguendo* that an honest miscommunication with an attorney might sometimes support good cause, Defendants' repeated and willful evasion of service in this case wholly undermines their ability to attribute Big Limos's default to their miscommunication with Esford. Although Defendants claim that they "did not willfully evade this lawsuit," Reply at 4, the record indicates otherwise. As noted above, Plaintiff was initially unable to serve Defendants at Big Limos's registered address because the address belonged to an apparently unaffiliated grocery store. After subsequently enlisting the help of a process server and two private investigators, Plaintiff attempted service seven times before he was able to successfully serve Big Limos, as well as at least ten times before he was able to successfully serve Walstrom. Even then, Plaintiff was able to serve Walstrom only because Investigator McAndrews happened to be waiting at Walstrom's residence when his wife came home on March 23, and Investigator McAndrews completed service despite the fact that Walstrom's wife ran away from him instead of cooperatively accepting the summons and complaint. Meanwhile, Walstrom was "well aware" of the pending lawsuit and Plaintiff's efforts to serve process. Dotson Aff. at 1. Indeed, it is undisputed that Walstrom told Investigator Dotson over the telephone on February 24, 2017—a month before Walstrom was finally served through his wife—that he intended to "incur as much cost for service as possible" for Plaintiff and his

counsel. *Id.*[8] Furthermore, Walstrom's statement to Investigator Dotson that he planned to "honor the original contract to produce a custom Limo for [Plaintiff], provided [Plaintiff] drops the lawsuit," suggests that Walstrom intended for his uncooperative behavior to pressure Plaintiff into abandoning this lawsuit altogether. *Id.*

Such willful evasion of service and blatant disregard for this pending litigation belie Defendants' assertion that their failure to timely appear and respond to the complaint was merely due to a miscommunication with Esford. Instead, their failure to timely appear and respond appears to be primarily attributable to Walstrom's refusal to cooperate, both as an individual defendant and as Big Limos's CEO and registered agent. In light of this willful misconduct, Defendants cannot show good cause to excuse Big Limos's default. *See S.E.C. v. Benger*, No. 09 C 676, 2014 WL 2198325, at *8 (N.D. Ill. May 27, 2014) (holding that defendant could not show good cause under Rule 55(c) where he willfully failed to meet deadlines and other court requirements); *Rank DMS, LLC v. Direct Disc Network, Inc.*, No. 06 C 1666, 2008 WL 4347736, at *5 (N.D. Ill. Mar. 19, 2008) (same); *see also Jones*, 39 F.3d at 164 (noting in the Rule 60(b) context that "she who willfully disregards deadlines and court orders faces a difficult, if not impossible, task in proving good cause for the default").

In sum, Defendants' purported miscommunication with Esford is not good cause to excuse Big Limos's default under Rule 55(c), and Defendants' willful evasion of service and disregard for this litigation further cement their inability to show good cause. Defendants' motion to vacate the entry of default as to Big Limos is accordingly denied.

---

[8]    The Court acknowledges the statement in Walstrom's affidavit that "[i]t was never [Walstrom's] intention to ultimately avoid service of process." Walstrom Aff. ¶ 39 (emphasis omitted). The Court notes, however, that this carefully worded statement is not inconsistent with Walstrom's undisputed statement to Investigator Dotson regarding his intent to "incur as much cost for service as possible." Dotson Aff. at 1. A defendant can willfully evade service for a period of time in hopes of racking up the plaintiff's costs without intending to "ultimately" evade service.

B.    **Quick Action**

Because Defendants have failed to show good cause to excuse Big Limos's default, the Court need not address whether Defendants have met the remaining requirements to vacate an entry of default under Rule 55(c). *See Cracco*, 559 F.3d at 630; *Pretzel*, 28 F.3d at 46–47. For the sake of completeness, however, the Court notes that Defendants have also failed to show that they took quick action to remedy Big Limos's default. Defendants maintain otherwise, arguing that they took quick action to correct the default by "fil[ing] their motion to vacate on the same day [they] learned of the miscommunication regarding the attorney client relationship and the legal proceeding." Reply at 6. While it is commendable that Esford immediately filed an appearance and a motion to vacate once he learned of Defendants' misunderstanding, Defendants' argument on this point suffers from two critical shortcomings.

First, Defendants' argument rests on the incorrect premise that the key period of time for purposes of the quick-action requirement is the time "between the day [a defendant] learns about the legal proceeding and the day the motion to vacate the default order was filed." *Id.* To the contrary, in considering the quick-action requirement, courts typically consider the date the default order was entered, rather than focusing solely on the date that the defendant first learned of the proceeding. *See Echo*, 2014 WL 1698340, at *2 (considering the period between the entry of default and the filing of defendant's motion to vacate); *Wells Fargo Equip. Fin., Inc. v. PMRC Servs., LLC*, No. 10 C 2438, 2011 WL 635861, at *1–2 (same); *Lyons*, 2010 WL 680877, at *2 (same); *Rank*, 2008 WL 4347736, at *5 (same); *see also Cracco*, 559 F.3d at 631 (considering both the date that default was entered as well as the date when defendant learned of the proceeding). In the Rule 55(c) context, courts have generally found the quick-action requirement to be satisfied only where the defendant filed a motion to vacate within a week or two after an entry of default. *Compare Cracco*, 559 F.3d at 631 (finding quick action where motion to vacate

was filed eight days after entry of default), *and Lyons*, 2010 WL 680877, at *2 (finding quick action where motion to vacate was filed "a few days" after entry of default), *with Rank*, 2008 WL 4347736, at *2, *5 (finding no quick action where motion to vacate was filed over four weeks after entry of default). Here, about four weeks passed between the entry of default on March 29, 2017, and the filing of Defendants' motion to vacate on April 24, 2017. This delay was too long for Defendants to meet the quick-action requirement.

Second, even if it were to focus on the period between the day Defendants learned of the proceeding and the day they filed their motion to vacate, as Defendants ask the Court to do, the Court still would not find the quick-action requirement to be met. Defendants assert that they did not learn of this proceeding until April 24, 2017, the same day they filed their motion. Reply at 6. But this assertion is contrary to the factual record. Defendants' own filings indicate that they learned of this proceeding no later than February 16, 2017, when they contacted Esford to seek representation in this matter. Defs.' Mot. Vacate ¶ 1. In other words, Defendants learned of this proceeding at least two months before appearing and filing their motion vacate. Such a long delay hardly amounts to "quick action." *See, e.g.*, *Rank*, 2008 WL 4347736, at *5.

In sum, Defendants have failed to meet the requirements of good cause and quick action to excuse Big Limos's default. Defendants' motion to vacate the entry of default against Big Limos pursuant to Rule 55(c) is therefore denied.

## II. Plaintiff's Motion for Entry of Default as to Walstrom

As noted above, Plaintiff filed a motion for entry of default as to Walstrom on April 19, 2017. According to Plaintiff, Walstrom is in default under Rule 55(a) because he failed to timely appear or respond to the complaint within twenty-one days after he was served on March 23, 2017. *See* Pl.'s 2d Mot. Default ¶¶ 31–35. In opposing the motion, Defendants do not dispute that Walstrom failed to timely appear or respond. Instead, they argue that Plaintiff's motion is

moot because defense counsel has now filed an appearance and because Walstrom has the same good cause to excuse his delay as Big Limos has to excuse its default. Defs.' Mot. Vacate ¶ 13. In addition, Defendants request a thirty-day extension of time to file an answer or response to the complaint. *See id.* ¶ 12; Reply at 1.

Under Rule 55(a), a court must enter an order of default against a defendant when the defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). In general, a defendant must file an answer or responsive pleading within twenty-one days after being served with the summons and the complaint. Fed. R. Civ. P. 12(a)(1)(A)(i), (b). A district court has discretion to extend a defendant's deadline to file an answer or responsive pleading for good cause or excusable neglect. Fed. R. Civ. P. 6(b)(1); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012). When a defendant cannot show good cause for failing to timely answer the complaint, however, the court may enter an order of default against him under Rule 55(a), rather than extending his deadline to respond. *See Pretzel*, 28 F.3d at 45–46 (finding that defendant did not have good cause to excuse "the late submission of its answer" and its corresponding default); Charles Wright & Alan Miller, 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed. 2017) (citations omitted) ("Rule 55(a) [ ] authorizes a default to be entered against any party who fails to plead or otherwise defend within the 21 days allowed by Rule 12(a). Of course, the court has discretion to grant additional time to a party to plead or otherwise defend."); *see also Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 504 (7th Cir. 2014) (noting that district court entered an order of default when defendant failed to timely answer the complaint).

For the same reasons that the Court finds a lack of good cause to excuse Big Limos's default, the Court concludes that Walstrom does not have good cause to support an extension of

his deadline to file an answer or responsive pleading. First, as discussed above, Walstrom's willful, ongoing evasion of service evinces a blatant disregard for this lawsuit and the rules governing litigants before this Court. Such intentional misconduct weighs heavily against a finding of good cause. Furthermore, Defendants' filings show that Walstrom had knowledge of this lawsuit no later than February 16, 2017—well before April 13, 2017, when his answer or responsive pleading became due. As such, Walstrom cannot blame his failure to answer on a lack of knowledge or notice of this proceeding. Furthermore, to the extent Walstrom blames his failure to answer on Defendants' miscommunication with Esford, the Court finds that this miscommunication is insufficient cause to extend Walstrom's deadline under Rule 6(b) for the same reasons that it is insufficient cause to excuse Big Limos's default under Rule 55(c).[9]

In short, it is undisputed that Walstrom was served on March 23, 2017. As such, his answer or responsive pleading was due twenty-one days later, on April 13, 2017. Walstrom, however, failed to plead or otherwise defend by that date. He has also failed to establish good cause or excusable neglect to warrant extension of his deadline to answer or respond. As such, the Court denies Defendants' requests for a denial of Plaintiff's motion and an extension of time to answer or respond to the complaint, and the Court grants Plaintiff's motion for entry of default as to Walstrom.

---

[9] To the extent Defendants also intend to argue that counsel's appearance alone is sufficient to moot Plaintiff's motion for default, the Court rejects the argument, too, as unpersuasive. Defendants have not cited any supporting case law for this argument. Indeed, relevant authorities indicate that merely filing an appearance is insufficient to avoid default. *See* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2682 ("The mere appearance by a defending party, without more, will not prevent the entry of a default for failure to plead or otherwise defend.").

## Conclusion

For the reasons stated herein, Defendants' motion to vacate the entry of default as to Big Limos, deny the motion for entry of default as to Walstrom, and file an answer or responsive pleading [18] is denied. Plaintiff's motion for entry of default as to Walstrom [15] is granted. Default is hereby entered as to Michael Walstrom.

**IT IS SO ORDERED.**                    ENTERED   6/27/17

_____

**John Z. Lee**
**United States District Judge**